JOHN NEWBURN, v. V. M. HYDE and NELLIE W. HYDE, Appellants.

**Vendor's lien:** ENFORCEMENT: EVIDENCE. Upon a review of the
1 evidence in this action, which is to establish a vendor's lien upon premises conveyed because of a failure to deliver certain personal property in part payment, it is held that a transfer of the personal property was a part of the agreement under which the premises were conveyed.

**Same.** Under the evidence it is also held that a certain writing,
2 concerning the transfer of the personal property which was delivered to the vendor, was in compliance with and embodied the agreement.

**Pleadings:** PROOF: VARIANCE. Where a petition asking the recov-
3 ery of certain personal property fails to state whether the agreement to transfer the same was oral or in writing, proof that it was written will authorize recovery, although certain representations were alleged to have been oral.

**Contracts for delivery of property:** ACTION ON: DEMAND: CONDI-
4 TION PRECEDENT: EVIDENCE. Under a contract for the delivery of personal property to be selected by the vendee, in which no time for performance is fixed, an action for damages because of failure to deliver will not lie until a demand has been made of the vendor, or someone acting for him, and an offer of the vendee to perform any condition precedent imposed on him. Evidence held insufficient to constitute a demand or offer to perform.

BISHOP, J., dissenting on the question of demand.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

FRIDAY, MAY 18, 1906.

REHEARING DENIED, THURSDAY, OCTOBER 25, 1906.

THE petition alleged the sale of lots 35 and 36 in Drake University's addition to Des Moines to defendant for the sum of $2,560, of which $1,100 in money and security had been paid, and that plaintiff " was to receive the remainder in buggies and carriages to the value of $1,460." In paragraph 3 it was further alleged: " That the said V. M. Hyde, represented to this plaintiff that the said buggies and carriages were in the Merchants' Transfer Company storage house in the city of Des Moines, Iowa, and that all or any part of them would be delivered to this plaintiff upon demand being made upon the said Merchants' Transfer Company, or by their man in charge, by said plaintiff paying forty-six (46) per cent. in cash of the list price of said vehicles." Paragraph 4: " That thereafter and, to wit, on or about the 13th day of June, 1903, this plaintiff went to the storage house of the said Merchants' Transfer Company, in the city of Des Moines, Iowa, and to the party who was then in charge, and demanded certain vehicles which were upon the list furnished this plaintiff, and referred to in Exhibit A, hereto attached, and tendered to said transfer company, or manager in writing, the forty-six (46) per cent. heretofore referred to, and demanded certain vehicles, that the said manager or party in charge of the Merchants' Transfer Company refused to deliver to this plaintiff, one or any one or any number of vehicles so demanded by this plaintiff." Wherefore the plaintiff prayed judgment for $1,460, and that the same might be established as alien against the premises sold to defendants. By amendment plaintiff alleged that the representations referred to in paragraph 3 were oral. The answer admitted the purchase of the property, but averred that the price was $1,100, and denied that plaintiff was to have any buggies or carriages as part of the consideration. All other allegations were denied, and the dismissal of the petition demanded. Judgment was entered against defendants for $788.40, with interest, and this estab-

lished as a lien against the property purchased. The defendants appeal.— *Reversed.*

*W. H. Stiles,* for appellants.

*C. C. Cole* and *John Newburn,* for appellee.

LADD, J.— The plaintiff conveyed lots 35 and 36 in Drake University's addition to Des Moines to the defendant Nellie W. Hyde, September 12, 1902, and received as consideration, in part, at least, $600 in money and a promissory note of $500 secured by a mortgage on the property. The plaintiff claims that in addition to this and as a further part of the consideration he was " to have buggies and carriages to the value of $1,460; " that the defendant V. M. Hyde, who acted as agent for his wife, Nellie W., orally represented that such vehicles were at the storage house of the Merchants' Transfer Company, and would be delivered upon demand and the payment of 46 per cent. of the list price. On the other hand, defendants contend that furnishing the carriages formed no part of the consideration; that Hyde's agreement to do so was gratuitous. The promise to furnish is admitted by Hyde, but he insists this was given after the purchase of the lots had been consummated by the execution of the deeds. He had begun negotiating with the view of including such an arrangement as a part of the deal, and it is somewhat unusual for those supplying retail dealers with goods at wholesale prices to give individuals not engaged in the trade like terms. Moreover, Newburn is somewhat corroborated by the testimony of one Stewart, who claims to have heard the bargain. From the fact that supplying the vehicles on the terms specified involves no financial loss or outlay on the part of Hyde, it does not follow that the opportunity to obtain them at wholesale prices was not a distinct and valuable advantage to Newburn. We are inclined to concur in the finding of

1. VENDOR'S LIEN: enforcement: evidence.

the district court, that the promise to furnish vehicles was a part of the agreement by virtue of which the lots were conveyed.

II.   No memorandum of the agreement was made at the time, and plaintiff first argues that the action is based on an oral contract.   Defendants respond that if this be so the petition should have been dismissed for that plaintiff relied throughout on a written order or duebill which was executed by Hyde in pursuance of the bargain between him and Newburn.   Such must have been our conclusion but for the plaintiff's argument in the alternative that, even though the agreement was reduced to writing, he is entitled to recover.   Was it in writing?   Newburn testified that Hyde informed him on the day following the conveyance that " he would get the buggy matter fixed up and bring it to me.   .   .   .   Mr. Hyde did not come back to the office for some time after that in regard to giving me the order or statement, but I was to have those buggies in the transaction but I think it was three weeks afterwards I received a letter from Mr. Hyde, mailed at Ft. Dodge. It was a duebill for the buggies.   Q. Did you take any security?   A. No, sir; I did not, but what I got later representing it was a duebill for the $1,460."   On the other hand, Hyde testified that he informed Newburn that he would mail the order in a few days, and did send him the following instrument:   " Due John Newburn, or order, $1,460 in W. A. Patterson Company line of carriages and buggies now in storage at Merchants' Transfer Company, Des Moines, Iowa, at their published retail price list at Des Moines, Iowa, and it is hereby agreed and understood that, before any of the carriages, buggies, etc., can be removed, 46 per cent. of the special list price shall be paid in cash to the W. A. Patterson Company or Cooley & Lott, Cedar Rapids, Iowa, etc., their distributing agents for this State.   V. M. Hyde."   We are satisfied that this was furnished Newburn in compliance with their agreement.   That he so

2. SAME.

treated it and accepted it as such is manifest from his testimony, in which he declared that this order or duebill, together with one received from Cooley & Lott, was his authority for getting the vehicles from the transfer company; that " it expressed the arrangement there so far as getting the buggies and what I was to pay in cash;" that he " regarded it as an obligation of Hyde that they would be delivered to me and I would get them at the Merchants' Transfer Company. I never attempted to get them without the order, and I did not know that I could. . . . This Exhibit B and other papers constitute in my mind an order on the transfer company for these buggies and I acted upon them as an order." That this writing was regarded by both parties as expressing the understanding between them is put beyond doubt by this evidence.

In view of this conclusion, appellants urge that there should be a dismissal of the petition because based on an oral agreement. Reference thereto, however, will demonstrate that, while certain representations are said to have been oral, it is not averred whether the agreement by which plaintiff was to have the carriages was in writing or oral, and in the absence thereof recovery might be had upon proof that it was either.

3. PLEADING: proof: variance.

III. Before proceeding further it will be well to analyze somewhat the obligation of Hyde upon which plaintiff necessarily bases his cause of action. It will be noted (1) that it does not fix the time of performance; (2) that the particular articles to be delivered are not named, but are to be selected from " carriages and buggies now in storage at Merchants' Transfer Company;" and (3) that before any of those selected may be moved, 46 per cent. of the special list price is to be paid " to W. A. Patterson Company or to Cooley & Lott." The latter firm on October 20, 1902, directed the Merchants'-Transfer Company to deliver to plaintiff " any thing from our transfer stock of W. A. Patterson

4. CONTRACTS FOR DELIVERY OF PROPERTY: action on: demand: condition precedent: evidence.

Company vehicles on payment to you in cash 46 per cent. of our 1902 price list." The propriety of making the tender to the manager of the transfer company, instead of in strict compliance with the contract, is not questioned. Nor is it contended that by " now in storage " was meant at the time the agreement was made. It is conceded — whether properly so we do not decide — that this refers to the date when the articles may be demanded. Appellants insist that as the time of maturity is not fixed, nor the particular vehicles to be delivered designated, a demand was essential, and that this should have been made on Hyde. Section 3056 of the Code declares that " No cause of action shall accrue upon a contract for labor or the payment or delivery of property other than money, where the time of performance is not fixed, until a demand of performance has been made upon the maker and refused, or a reasonable time for performance thereafter allowed." That this was a contract for the delivery of property is not open to controversy. Though not signed by Newburn, it was accepted by him. See *Mail & Times Pub. Co. v. Marks,* 125 Iowa, 622. And we think as a condition precedent a demand was essential to the maintenance of a cause of action. *Frederick v. Remking,* 4 G. Greene, 56; *Whipple v. Abbott,* 4 G. Greene, 66; *Johnson v. Shank,* 67 Iowa, 115.

Moreover, as the selection from a general stock of vehicles plaintiff might desire, as he wanted them, was contemplated, and also a tender of a percentage of the list price of such as he might select, we think that, independent of other considerations, a demand was necessary before an action for value could be maintained. In *Townsend v. Wells,* 3 Day (Conn.) 327, the note of $80 was payable in rum, sugar, or molasses within eight days, and it was held that, if the promisee failed to elect which he would take in season to allow the promisor time to deliver, the latter was bound to perform his contract by delivering one of the articles specified, and that it was unnecessary to aver

that the payee had made his election and notified the promisor what he would take.  This was followed in *Fleming v. Potter*, 7 Watts (Pa.) 380.  See, also, *Thomas v. Roosa*, 7 Johns (N. Y.) 461.  But in *Gushee v. Eddy*, 11 Gray (Mass.) 502  (71 Am. Dec. 728), a note of $200 was payable in "window frames, brackets, sash, blinds, doors, and mouldings as the payee shall need," and it was held that this required a specification of the articles required.  In *Lakey v. Chadwick*, 66 Mo. 622, the note was "payable in merchandise during the year," and the court held that it devolved upon the payee "to take, select, or choose what articles of merchandise he desired.  The defendant was powerless.  All he could do was to have at his store miscellaneous merchandise in sufficient quantity ready for delivery, when the plaintiff made his selection."  To the same effect, see *Field v. Black*, 42 Vt. 517 ; *Baker v. Stoughton*, 1 Or. 227.  See 9 Am. & Eng. Enc. of Law, 203.  The case falls within the rule of these last cases.  The necessity of a demand in event the agreement should be found to have been in writing is not seriously questioned.  The point upon which counsel differ is with respect to the person upon whom such demand should have been made.  The obligation sued on is that of Hyde.  The carriages and buggies are "due" from him.  Aside from stating this, the contract describes their location and fixes the amount to be paid and to whom.  The time within which the obligation is to be met is not mentioned, but the statute declares that in such a case no cause of action shall accrue "until a demand of performance has been made upon the maker."  No demand was ever made upon Hyde, or upon any one authorized to act for him, and for this reason we think the petition should have been dismissed.

It is urged that the transfer company or Thompson, its manager, was the agent of Hyde and for this reason a demand upon it or him was sufficient.  The duebill does not designate either as such and this was not proven.  Hyde

was in the employment of Cooley & Lott, who were state agents of the W. A. Patterson Company line of carriages, and they had contracted with the Merchants' Transfer Company to render certain services for them. The transfer company recognized orders for the delivery of goods by Hyde as an employé of Cooley & Lott, but there was no contract of agency or otherwise between the transfer company and Hyde. Though the transfer company may have been bailee of Cooley & Lott, it sustained no such relation to Hyde. Nor did the latter sustain any relation to that company save that both were employés of the same principal. It is said, further, that, as the carriages were to be delivered at the storage house of the transfer company, a demand there, even though in defendant's absence, was sufficient. This might be so if the company was authorized to deliver for Hyde. But, even if it were to be conceded that a demand on the transfer company or its manager would have been sufficient, none such as to fix defendant's liability was ever made. By the terms of the contract, plaintiff was not entitled to procure any carriages or buggies not " now in storage." Those available were, as said in the petition, " such as were in the Merchants' Transfer Company's storage house." The only tender of the 46 per-cent. of the list price alleged was that in writing on carriages named therein and in words following: " Des Moines, Iowa, June 13, 1903. To Merchants' Transfer Company, City: I hereby tender to you 46 per cent. of the list price of two spring wagons No. 217-1-2, four No. 9 buggies, and Stanhope No. 125, and demand the delivery to me of the same; also tender you the 46 per cent. of the list price of 3 No. 150 buggies, and 4 No. 97 road wagons, and demand the same; all being of the W. A. Patterson Company make, and demand the same. John Newburn." Prior to reading this to the manager, or handing to him a copy, Newburn procured of Thompson a catalogue of W. A. Patterson Company line of carriages and buggies, and at the same time

requested a list of those in stock. The manager advised him that he did not have time to make out a list, but that he could copy this from his stock sheets, showing every job on hand. Shortly after a lady came and with the manager's assistance made out the list. Later Newburn appeared with the written demand set out, containing not a vehicle to be found in the list so prepared or in the storage house. Thompson so testified, and is fully corroborated by Shawler, a witness called by plaintiff, who swore that he and Newburn "looked all through the establishment," and "there was none there that he wanted;" that "Mr. Newburn went out and picked out what buggies he wanted, and they did not have them there." Evidently plaintiff did not care to rely solely on the list prepared by his clerk, but personally inspected the jobs on hand to make certain that none of these had been included in the demand. That the witness, after saying the manager responded, when the written demand was made, that he did not have them, and added later that Thompson had stated that he did not have part of them, can make no difference; for both he and Thompson are positive in their testimony that none of the vehicles included in the demand were in the house. Stewart does not pretend to say whether any of those demanded were there. This evidence is met by the statement of Newburn that Thompson said "he had some spring wagons which we wanted."

Aside from this, there is no evidence that plaintiff tendered the 46 per cent. of the list price or demanded any vehicle "in storage," and we do not regard this as sufficient to overcome the positive testimony of Thompson that none of these were on hand, and the uncontradicted testimony of Shawler that he and Newburn looked through the establishment and found none. So that, even if a demand might properly have been made on the transfer company, that in fact made was not for vehicles defendant had promised to deliver to plaintiff. It appears, however, that Thompson became irritated by the tactics of Newburn, and remarked

that he would not deliver the vehicles demanded, if they were there. This did not obviate the necessity of a demand, for defendant was under no obligation to procure any of the buggies not there. Had Newburn been entitled to have these furnished, a different question would arise. But he was not, and Thompson, by indicating that, if there were goods on hand which neither the transfer company nor Hyde was under the slightest obligation to procure or deliver to Newburn, he would not let him have them, did not refuse to furnish him any Hyde had promised in the duebill; nor can it be inferred therefrom that he intended to refuse him any then in the house. The duebill had no relation to goods not in storage. Hyde was under no obligation to furnish or have the transfer company deliver any goods not there, and the attitude of the transfer company with reference to carriages not included in the duebill was entirely immaterial. It was without authority to speak with reference to anything not in its possession as bailee of Cooley & Lott. The fact of its refusal to supply Newburn with carriages Hyde had not undertaken to let him have certainly did not indicate that a demand for some of the one hundred and fifty jobs in the house within the terms of the duebill would have been unavailing, or but an idle ceremony. Indeed, the evidence that any of these would have been delivered upon the payment of 46 per cent. of the price list is undisputed. Because of plaintiff's failure to make proper demand, the petition should have been dismissed.— *Reversed.*

BISHOP, J. (dissenting).— In my view a demand upon the transfer company was all that was required. I do not care to enter upon a discussion of the evidence, and content myself by saying that I think a sufficient demand appears.